May I please the court, Scott Hunt, appearing on behalf of Appellant Wayne Wilson. This appeal of a defamation claim and intentional infliction of emotional distress turns on what Mr. York stated was the basis for his belief in his defamatory statement that plaintiffs knowingly allowed an employee under his supervision to work off the clock and admitted it. Counsel, let me just start out by telling you what my issue is with your argument and maybe you can help me by responding specifically to that. Certainly. As I understand it, Mr. York said he relied on three things for his belief. One was an admission by your client, which your client denied, so that's a disputed issue. Secondly, he relied on the fact that your client did the payroll for Clark and as a managerial person was expected to know what was going on with his employees. It's undisputed that he was doing the payroll. The third thing was he relied on the fact that three or four days before he met with your client, your client went into the computer and added hours for Mr. Clark because he knew that he had worked more hours, and that's S.E.R. 4343. And he said that he made the logical inference that if he added hours, he knew that more hours had been worked, and that's undisputed. So what's wrong with relying on those two things, and what else is there that demonstrates that he lacked an objective ground for his belief? Well, first of all, we would take issue with the way you state the three reasons. In his testimony when asked, and this is at ER 103, when Mr. York is asked, what is the, did he believe plaintiff knowingly permitted Clark to work off the clock, he said yes. He's then asked, what is the basis for that belief? He says his admission. He's then pressed further as to what, beyond the admission, what was the basis other than the admission? Was there any? And he says he admitted it, and to verify it, you know, I wanted him to write on the time and attendance how many hours he knew Jeff worked. So those are the two that Mr. York himself. No, I did not ask for that. At ER 110, he says he relied on another source of information, which were the time and attendance records. He said the fact that Wilson added those hours, it wasn't just pulling up the records, but also the fact that Mr. Wilson added those hours to his time. Right. So he relied on the fact that it had happened. And even if he was mistaken, what about that sequence of events permits a finder of fact to conclude that he acted in bad faith? Well, initially, to assert that he admitted, the first one is the assertion that there's an admission. If plaintiff is believed, that's an outright lie. An outright lie allows a jury to conclude that the others aren't the real reason. If he's lying about some of the reasons. What allows a jury to conclude that it's a lie rather than a difference in recollection about what was said? Because there's a lot of quibbling over whether he knew or claimed or that sort of thing. Certainly, one outcome could be in this disputed fact as to whether there was an admission or not. One outcome by the jury could be that it was simply a misunderstanding. We lose. Another reasonable inference is that it's a known lie, that he never admitted it. He knew he never admitted it. He asserted he admitted it for the reasons that we set out in our briefing to effectuate a termination. That is a reasonable inference, not the only reasonable inference. But we get the benefit in our favor at this stage. As to the issue, the third issue, Judge Graber, that you raised regarding the changing of the time clock, and the fact that plaintiff was responsible for the time clock. Again, I believe there's a question of fact there. We addressed that issue in our reply brief, and our argument is essentially this, that the knowledge that our client worked alongside Mr. Clark, and the knowledge that our client worked long hours with Mr. Clark, and the knowledge that our client, as part of his regular supervision of hours and time clocks. May I just get right to the issue here? Isn't there evidence in the record that shows that Mr. Clark was correct in his belief that Wilson normally allowed Clark to work off the clock? And going back to the deposition of Mr. Wilson, SCR 40, he says, in response to a question, I added hours in because I knew he worked extra hours. Not that he worked off the clock. But let me continue, please. SCR 42, in response to the question, a question, but before that you had already added hours back in, answer correct. And then on SCR 43, question, how many days before had you gone and had your time with that computer where you added hours back in? Answer, well, I did that on Sunday. It would have been the following Thursday. Aren't these admissions that he regularly allowed Mr. Clark to work off the clock? No. Why not? They're admissions that as part of his duties he edited and corrected the time records and that when he knew Mr. Clark had worked, that he made the appropriate corrections to the time clock, which he explained may be necessary as a normal part of the function due to the change in the midnight, the effect of changing of midnight on the time clock. Now, there's a question of fact. They argue that's not how that worked. But that's a question of fact for the jury to decide. Mr. Wilson's testimony is that he only knew of one time when he worked off the clock. If that is believed, and that's the one time when, I'm sorry, I just misspoke, and I need to make sure I'm clear on that. Mr. Wilson's testimony is that he only knew of one time he was in the store not working. His testimony is that he did not know he was working off the clock. And if he did not know he's working off the clock, he's not adjusting those hours for time working off the clock. He's adjusting those hours to make the hours accurate. Now, that's not the only. Excuse me. What do you make of this question and answer? The question, so he had actually clocked in and clocked out that week and had, in fact, reflected fewer hours than you knew he worked that week. Is that right? Yes. So he was working off the clock, and you had already added in hours when I became aware. What does that testimony portend? What that portends is that he's had to make corrections in the past, but he never allowed him to work off the clock knowingly. It's when he later becomes aware that there's an issue, he corrects it as is supposed to be done under the policy. You're not supposed to work and not get paid. So there's no, I'm sorry. Did you admit that he became aware that there was work off the clock then? At that point, he said he became aware that he was working off the clock. Doesn't that equate to knowledge? It equates to a question of fact as to when that is taking place and what exactly is being referred to. He states elsewhere that he does not know he is working off the clock. So given the objection of argumentative and given the, I argue, ambiguity to this line of questioning, which does start on SC40, there is still a question of fact when you look at his entire testimony. His entire testimony includes a refutation of knowingly allowing him to work off the clock and refuting the admission that he did so. Counsel, if it's ambiguous, if reasonable people could disagree about whether in fact this had occurred, then why doesn't the employer win? And the reason is, the reason I ask that question is, in order for you to have a question of fact on the ultimate issue, there has to be something from which a jury could find a bad state of mind. Either that Mr. York flatly didn't believe what he said, which there's no evidence of, or that he lacked an objective basis for believing it. And if it's ambiguous, how can he lack an objective basis? Well, it's not ambiguous to the assertion that he admitted it. And as to that, there is no ambiguity. There's only one of three grounds. You have to show that he had no objective basis. And if he had two out of three objective basis, I don't understand how you can prevail. Well, if there's a question of fact as to the other two, again, if there's more than one reasonable inference, at this stage, we don't have to disprove the one reasonable inference that goes in defendant's favor. We have to raise the reasonable inference that goes in our favor. And if there is such a reasonable inference, it ought to be the jury that ultimately decides which one is the correct one. Let me see if I understand what you're saying. Are you saying that if we review SCR 40 through 43, Wilson in that portion of his deposition is not admitting that he adjusted hours to reflect that Clark had worked off the clock? Is that what you're saying, that he did it for other reasons? I'm saying if you look at that testimony in the entirety of Mr. Wilson's testimony, including his clear statements that the section in SCR 40 through 42 that the court has drawn our attention to, is not compel a single reasonable inference. The issue isn't does it raise, does that raise an inference in favor of defendant? Yes. Does it compel that that's the only inference based on the entirety of the testimony by Mr. Wilson and Mr. Clark? No. And that's the point. No reasonable inference can be drawn from that. From the entirety of it? Yes. Is that it's what it's essentially our argument in the reply brief, that Mr. Wilson properly edited and made corrections to time cards as was required by the process, by the nature of those time records, and that if you include that with his other testimony denying the admission and denying the knowledge, then there is a question of fact as to whether Mr. York had the reasonable basis. Certainly defendant could win. Are you saying that he made adjustments because of computer glitches and because there were employee mistakes in terms of how they clocked in and out? Precisely. Exactly. I'm afraid I've run out of time. You have your time and then some, but we've asked a lot of questions and you may have a minute. I appreciate that, Your Honor. Thank you. May it please the Court, Corbett Gordon, for the defendant below and the appellee here, Dollar Tree Stores. Counsel, what's wrong with Mr. Hunt's argument that if the jury decides that York lied about Wilson's admission, it can decide that he lied about everything else, including his innocent state of mind? The Bickford case, Your Honor. The Bickford case says that if the managers have access to a mixed record, it's okay for them to rely on part of it in that case that there was poor performance and that they could say there was some poor performance even though there was evidence of some good performance. So in this case, Mr. Hunt's argument fails because maybe there is more than one inference that can be drawn here, but managers are entitled, in this case Bob York, to rely on the inference that caused him to say that this is not, that he knew that Mr. Wilson was allowing Mr. Clark to work off the clock based on the things that he knew. And one of the problems with Mr. Hunt's argument factually is when you look at ER 119, which was put in the record by Mr. Wilson, and you look at adjustments supposedly made for the computer going over midnight, if you look at the handwritten adjustments on that page, the first one is for Tuesday, December 17, 2002, and the first entry is in at 6 a.m., out at 9 a.m., conclusion 3 hours. And Mr. Wilson has written to the right of that 6 hours. He's added 3 hours' time there. That's not midnight. That's the morning. You look at the second one, and we go from 9 p.m. to 11.59 p.m. when he clocks out. So what page of the record are you reading from? ER 119. Oh, okay. This is the example of the time card that Mr. Wilson adjusted to add hours in, and it has nothing to do with going over midnight. Let's discuss the timeline. On December 27, 2002, Mr. York receives information that Mr. Wilson may have violated store policy by allowing Clark to work off the clock when they confront Mr. Clark. Four days later, he's fired. Could you summarize the timeline and reference all information acquired by York that supports his belief that Wilson normally allowed Clark to work off the clock within that timeline? December 27 would be the buddy buying meeting when they catch Mr. Clark and talk with him about that. That's when the clock starts running. Okay. December 27th. On December 31st, he's fired. That's correct. And the question is, in referencing that timeline, would you discuss all information acquired by Mr. York during this portion of time that supports his belief that Wilson normally allowed Clark to work off the clock? It was during or shortly after that meeting that ER 119 was developed, the adjustments to, he said, within two or three days afterwards. Mr. York wasn't aware of that at the time. But he did know that he adjusted the time. He went off to adjust the time, and he did adjust the time. So he knew that, and he says that, and there's nothing really to refute it, that his supposition was. Would you refer me to the portions of Mr. York's deposition where he's asked the question, why did you conclude that Mr. Wilson normally allowed Clark to work off the clock, and what do you list it in terms of supporting his belief? I would refer the Court exactly to the pages that the Court has already asked Mr. Hunt about, and that's 40 through 43 where he starts off talking about the admission and then ends up. The admission being what? The admission that we're not going to talk about here, but the conflict of fact that Mr. Wilson told him that he admitted that he knew that Jeff Clark was working off the clock. But then he does go on, as Judge Graber had pointed out, and talk about his adjustment to the time records, and that he supervised him. And also, I think it's undisputed in this record, that at all times, Mr. York knew that Mr. Wilson supervised Mr. Clark even before the 27th, and that he set the schedule. It's undisputed in the record that he set the schedule, and that he was responsible for that schedule. So he knew how many hours Jeff Clark was supposed to be working. So as he's going in and making these adjustments that he makes, he's seeing that he's working more hours than he was put in the schedule for. And I think the confusion comes in because – Let me ask you this. Where in the deposition of Mr. York does he say, specifically, that he relied on the schedule as a basis for his belief that Wilson had allowed Clark to work off the clock? I think that's a reasonable inference. Would you direct me to the deposition? It's a reasonable inference. I do not have a citation to the deposition. I don't believe that came out in the deposition. It was in his affidavit, paragraph 11, I believe. It should be SCR 11. That's not the deposition, but it's York's affidavit. That's correct, and he talks about having knowledge that he set the schedules. He was expected to know whether associates were actually working. But he himself was working long hours. Isn't the better information from the deposition where the employee himself is asked to specifically list the reasons why he came to this belief? And declarations are sometimes written by lawyers to support claims. Should we give less weight to the declaration than the deposition? When there is an absolute conflict between the two, I think the court does come down in case law of saying that you can't create an issue of fact by having a contrary fact stated in a declaration. But where it supplements and doesn't directly contravene it, I think you can pay attention to it. Isn't it for the jury to decide? I think the question shouldn't reach the jury if there isn't a reasonable inference that the jury can make. And I think I take you back then to the Bickford case that when there's a mixed record, the manager is not establishing the manager has an improper purpose if the manager relies on a portion of the record and not the entire record that he's aware of. And that's assuming that Mr. Wilson did, in fact, deny knowledge at the time. Mr. Wilson is not given an opportunity to explain his position. Under Oregon law, is it not the case that where a defendant shows little or no interest in hearing plaintiff's explanation before making defamatory statements, that that may be interpreted by a prior fact, that the defendant lacked reasonable basis for his belief? Isn't that a factor for the jury to consider? Well, I think what we have to pay attention to here about the reasonable belief is what did Mr. York know at the time he made his statement and not whether this investigation was done properly or not. That would be a whole different cause of action that isn't at issue here. So I think we're mixing our analysis a little bit if we go off on that tangent. Mr. Scott talked about a knowing lie. And I think the court needs to focus on what evidence is there other than the testimony that Mr. Scott points to, that Mr. Wilson says he didn't say what Mr. York says he said. There is a direct conflict there. But in terms of what was in Mr. York's mind at the time he made the statement, I think it is a reasonable inference that even if Mr. Wilson said these things, and there is some peripheral evidence from a witness who wrote a statement of overhearing. One witness says they overheard nothing being said, and another witness says they overheard something being said. But in any case, even if Mr. Wilson denies and denies and denies that he admitted letting Jeff Clark knowingly work off the clock, you still have all of the other things that Mr. York knew about the situation. And when a manager is making an assessment, a manager is making credibility calls. Now, I'm not saying that's what happened in this case. I'm not conceding that Mr. Wilson's testimony is absolutely correct, but we have to take it as being correct for the purpose of this argument. And so if we take it as being correct, even if Mr. Wilson three times denied knowing it, all of the other things that Mr. York knew about Mr. Wilson's supervision of Mr. Clark, about the hours they were working, about his responsibilities, about the company policy and working off the clock, is plenty of evidence for the district manager to draw a reasonable inference that he knew that his subordinate was working off the clock. So I don't think we have a problem there. And again, I would go back to the Bickford case of where there's a mixed record, the managers can pick out part of that record and believe it and disregard the other part, and that is not unreasonable. And he arrived at the conclusion in four days. Well, he actually turned the information over to HR, and HR instructed him to terminate. So he didn't arrive at any conclusion. He simply made a statement that's under review here. Because the claim is for defamation and not for, as it reaches us now, it's not for wrongful termination but only what he told human resources. Exactly. And so Judge Otero's question in the beginning is, you know, what did he know or gain knowledge of during that time? And it's really what was in his mind at the time he said what he knew ahead of time and what he gained, if anything, during that brief period of time before he made his statement. But after he made his statement, what happened with the investigation is irrelevant. Let's put the investigation aside. The belief still has to be objectively reasonable, correct? I think the belief has to be objectively reasonable, and I think it is on these facts, and it has to be sincerely held. There's no evidence. There's no evidence in this record of any ulterior motive of this district manager for getting rid of somebody who's been trained, who's running something, the store is just opening, everything is in play, and suddenly, you know, the company decides to fire somebody. There's no evidence he has any motive other than enforcing the company policy to give the statement that he gives. Thank you, Cassie. Thank you. Mr. Hunt, we'll give you a minute for a vote. I appreciate the court's generosity. Quickly, citing to page SER 42 that the court was asking me about, sentences 9 through 12 establishes that this testimony is about a period of time that Mr. Wilson did not know about until after he had the conversation with Mr. York. It sends the whole part of that testimony into question as to when he knew it and what he knew. Looking at the reasons Mr. York asserts for his belief, the reliances on Mr. Wilson adding hours, Mr. Wilson's testimony, if you read through it all, including ER 110, establishes that those are hours he was told to add by Mr. Wilson. My belief is the Bickford case is not a case such as this where there were three asserted reasons for the reasonable belief. In the Bickford case, it was a question of performance and a mixed record. And if I may, one last point, the termination is relevant, not necessarily to the defamation claim. But it's relevant to the IIED claim and it is relevant to the defamation claim in that it establishes or raises a question, rather, it raises an inference of an ulterior motive to terminate plaintiff. Why else does he lie about the admission? It's a zero-tolerance policy regarding that working off the clock. If he lies about the admission, he guarantees the termination. Thank you. Thank you, counsel. The case just argued is submitted.
judges: Graber, Rawlinson, Moskowitz